Honorable Ronald B. Leighton

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

QWEST CORPORATION,

                Plaintiff,

v.

WASHINGTON UTILITIES AND
TRANSPORTATION COMMISSION,
JEFFREY GOLTZ, in his official capacity
as Chairman of the Washington State
Utilities and Transportation Commission;
PATRICK OSHIE, in his official capacity
as a Commissioner of the Washington State
Utilities and Transportation Commission;
PHILIP JONES, in his official capacity as a
Commissioner of the Washington State
Utilities and Transportation Commission,

and

ESCHELON TELECOM, INC.,

                Defendants.

CASE NO. 3:09-cv-05259-RBL

FINDINGS OF FACT,
CONCLUSIONS OF LAW, AND
ORDER FOR JUDGMENT

ATTORNEY GENERAL OF WASHINGTON
Utilities and Transportation Division
1400 S Evergreen Park Drive SW
PO Box 40128 Olympia, WA 98504-0128
(360) 664-1183

This matter having come before the Court for hearing, and the Court having read the briefs of the parties and heard the argument of counsel, and having reviewed the administrative record submitted by the Defendant Washington Utilities and Transportation Commission, and being fully advised, the Court hereby enters its Findings of Fact, Conclusions of Law, and Order for Judgment as follows:

## FINDINGS OF FACT

1.      This matter concerns an appeal and cross-appeal of an order of the Washington Utilities and Transportation Commission ("WUTC" or "Commission") that resolved disputed issues in an arbitration proceeding, conducted pursuant to Section 252 of the Telecommunications Act of 1996 ("the Act")[1], to establish terms and conditions of interconnection between Qwest Corporation ("Qwest") and Eschelon Telecom, Inc. ("Eschelon").

A.      **The Telecommunications Act of 1996**

2.      Congress adopted the Telecommunications Act of 1996 to develop competition in local telecommunications markets.  The Act distinguishes between incumbent local exchange carriers ("ILECs"), which historically operated as monopoly providers of telecommunications services in their geographic service territories, and competitive local exchange carriers ("CLECs").

3.      Qwest is an ILEC, while Eschelon is a CLEC.

4.      As the Federal Communications Commission ("FCC") has observed, the Act has "strong procompetitive goals," and directs the removal of "not only statutory and

---

[1] 47 U.S.C. § 151 et seq.

ATTORNEY GENERAL OF WASHINGTON
Utilities and Transportation Division
1400 S Evergreen Park Drive SW
PO Box 40128 Olympia, WA 98504-0128
(360) 664-1183

1    regulatory impediments to competition, but economic and operational impediments as well."[2]

2        5.      Section 251(b) of the Act places certain obligations on LECs in general, and

3    Section 251(c) of the Act places additional obligations on ILECs alone, to open local markets

4    to competition.  Of particular significance for this case, Section 251(c)(3) requires ILECs to

5    provide CLECs with "nondiscriminatory access to network elements on an unbundled basis at

6    any technically feasible point, on rates, terms, and conditions that are just, reasonable, and

7    nondiscriminatory, in accordance with the terms and conditions of the [parties'

8    interconnection] agreement and the requirements of this section and section 252 [of the Act]."

9        6.      Section 251(c)(1) of the Act requires ILECs and CLECs to negotiate in good

10   faith regarding the terms and conditions of an interconnection agreement, which includes the

11   terms governing a CLEC's access to unbundled network elements ("UNEs").

12       7.      The "elements" that are necessary to provide local telecommunications service

13   include the "loop," which is usually a pair of wires connecting a customer location to the

14   central office; and "transport," which carries calls between central offices.  Unbundled access

15   allows a CLEC to separately lease the elements that make up the ILEC's network.  The Act

16   requires that the rates, terms, and conditions under which the ILEC provides the CLEC with

17   unbundled access be "just, reasonable, and nondiscriminatory."

18       8.      Section 252(d)(1) of the Act requires that the rates an ILEC charges for UNEs

19   be cost-based.  Non-UNEs that could be used to provide the same service can be priced at

20   higher rates.

_____

[2] First Report and Order, *Implementation of the Local Competition Provisions in the Telecommunications Act of 1996; Interconnection between Local Exchange Carriers and Commercial Radio Service Providers,* CC Docket Nos. 96-98, 95-185, 11 FCC Rcd 15499 (1996) , ¶¶ 3, 245.

PROPOSED FINDINGS AND CONCLUSIONS - 3
No. 3:09-cv-05259-RBL

ATTORNEY GENERAL OF WASHINGTON
Utilities and Transportation Division
1400 S Evergreen Park Drive SW
PO Box 40128 Olympia, WA 98504-0128
(360) 664-1183

9.      When an ILEC and a CLEC are not able to reach agreement on the terms

of an interconnection agreement, Section 252(b)(1) of the Act authorizes either party to

petition the state utilities commission to arbitrate any "open issues." Section 252(c)(1)

of the Act, in turn, provides:

> STANDARDS FOR ARBITRATION.—In resolving by arbitration under
> subsection (b) any open issues and imposing conditions upon the parties to the
> agreement, a State commission shall—
>
> > (1) ensure that such resolution and conditions meet the requirements of
> > section 251, *including the regulations prescribed by the [Federal
> > Communications] Commission pursuant to section 251.*

(Emphasis added).

## B.      The FCC's *Triennial Review Order* and *Triennial Review Remand Order*

10.     The FCC has established regulations to implement the requirements set forth in

the Act, including those pertaining to unbundling, and those requiring ILECs to provide

"conversions" and "commingling".[3]  The purpose of the FCC's rules is "to implement Sections

251 and 252" of the Act.[4]

11.     Section 251(d)(2) requires the FCC to determine which elements ILECs are

required to offer to CLECs on an unbundled basis.  In making this determination, the FCC

must consider whether access to the network element would impair the CLEC's ability to

provide service.  The FCC addressed the issue of what elements must be offered as UNEs in

two orders, the *Triennial Review Order* [TRO][5] and the *Triennial Review Remand Order*

---

[3] *See* 47 C.F.R. §§51.309(e) - (g) & 51.316(a).
[4] 47 C.F.R. §51(b).
[5] Report and Order, *In the Matter of Review of the Section 251 Unbundling Obligations of Incumbent
Local Exchange Carriers*, 18 FCC Rcd. 16978 (2003), *vacated in part, remanded in part*, *U.S. Telecom Ass'n
[USTA] v. FCC*, 359 F.3d 554 (D.C. Cir. 2004).

ATTORNEY GENERAL OF WASHINGTON
Utilities and Transportation Division
1400 S Evergreen Park Drive SW
PO Box 40128 Olympia, WA 98504-0128
(360) 664-1183

[TRRO].[6]  Initially, the FCC took the position that ILECs had to unbundle and provide most basic network elements at cost-based prices.  Later, as a result of a series of court decisions,[7] the FCC limited the number of elements that had to be provided as UNEs, holding that CLECs would not be impaired without access to such elements.  Among the elements that the FCC "delisted" from section 251 unbundling requirements are high-capacity loops and high-capacity dedicated transport.[8]

12.     This delisting process further led to the issue of "conversions" that is presented in this case—that is, the process of converting a product originally provided as a UNE to an alternative service arrangement.

13.     In the *TRO,* the FCC stated that conversions should be "a seamless process that does not affect the customer's perception of service quality," and that the parties should implement operational procedures to ensure this result.  The FCC further stated that because both ILECs and CLECs are bound by duties to negotiate with each other in good faith, conversions should, therefore, be accomplished as part of the parties' interconnection agreements.  The FCC declined to adopt rules establishing specific conversion processes and procedures.[9]

14.     In the *TRRO*, the FCC further addressed conversion issues.  However, it again did not establish specific rules governing the process by which such transitions would take place.  Instead, terms and conditions for conversions are to be established by Section 252

---

[7] Order on Remand,  *In the Matter of Review of the Section 252 Unbundling Obligations of Incumbent Local Exchange Carriers*, 20 FCC Rcd. 2533 (2005), *aff'd, Covad Communications Co. v. FCC*, 450 F.3d 528 (D.C. Cir. 2006).
[7] *See  AT&T Corp. v. Iowa Utilities Bd.*, 525 U.S. 366, 388-91 (2002); *USTA v. FCC*, 290 F.3d 415 (D.C. Cir. 2002); *USTA v. FCC*, 359 F.3d 554 (D.C. Cir. 2004).
[8] *TRRO*, ¶¶ 142, 195.

ATTORNEY GENERAL OF WASHINGTON
Utilities and Transportation Division
1400 S Evergreen Park Drive SW
PO Box 40128 Olympia, WA 98504-0128
(360) 664-1183

interconnection agreement negotiations.  The FCC stated:

> We expect that incumbent LECs and competing carriers will implement the
> Commission's findings as directed by section 252 of the Act.  Thus, carriers
> must implement changes to their interconnection agreements consistent with our
> conclusions in this Order.  We note that the failure of an incumbent LEC or a
> competitive LEC to negotiate in good faith under section 252(c)(1) of the Act
> and our implementing rules may subject that party to enforcement action.  *Thus,*
> *the incumbent LEC and competitive LEC must negotiate in good faith regarding*
> *any rates, terms, and conditions necessary to implement our rule changes.*  We
> expect that parties to the negotiating process will not unreasonably delay
> implementation of the conclusions adopted in this Order.  *We encourage the*
> *state commissions to monitor this area closely* to ensure that parties do not
> engage in unnecessary delay.[10]

15.     The FCC also addressed the issue of "commingled arrangements" that is

presented in this case.  Commingling consists of a UNE connected to a tariffed, non-UNE

service.  At issue in this case are point-to-point combinations of loop and transport, commonly

referred to as an "enhanced extended loop," or "EEL."[11]  An EEL allows a carrier to serve

customers connected to a particular central office without the added expense and resources of

having collocation and equipment in that central office.[12]  There is no functional difference

between a UNE EEL and a commingled EEL.  They use the same facilities and do the same

things.  The primary distinction between the two is simply the price change for one

component.[13]  This change in price results from a legal finding of "non-impairment" in a

particular central office—in other words, the delisting of one component of the EEL from the

UNE pricing requirements of section 251.  Whereas, in a UNE EEL, both the loop and

---

[9] *TRO*, ¶ 585, 586, 588 (footnotes omitted).
[10] *Id.*, ¶ 233 (emphasis added) (footnotes omitted).
[11] *See TRO*, ¶ 576.
[12] Eschelon (Denney) Direct Testimony, CR 7094, Ex. 130, at 141.
[13] Eschelon (Denney) Direct Testimony, CR 7094, Ex. 130, at 153.

ATTORNEY GENERAL OF WASHINGTON
Utilities and Transportation Division
1400 S Evergreen Park Drive SW
PO Box 40128 Olympia, WA 98504-0128
(360) 664-1183

transport are available at UNE prices (i.e., the lowest rate), in a commingled EEL, either the loop or the transport is available at UNE prices, but not both.

16.     The FCC had previously restricted the obligation of an ILEC to commingle UNEs with tariffed services.  In the *TRO*, however, it eliminated this restriction, and required "incumbent LECs to perform the necessary functions to effectuate such commingling upon request."[14]  The FCC further emphasized that commingling, and an ILEC's duties pertaining to commingling, may include combinations of UNEs and interstate access services:

> We conclude that the Act does not prohibit the commingling of UNEs and wholesale services and that section 251(c)(3) of the Act grants authority for the Commission to adopt rules to permit the commingling of UNEs and combinations of UNEs with wholesale services, including interstate access services.  An incumbent LEC's wholesale services constitute one technically feasible method to provide nondiscriminatory access to UNE and UNE combinations. . . .For these reasons, we require incumbent LECs to effectuate commingling by modifying their interstate access service tariffs to expressly permit connections with UNEs and UNE combinations.[15]

17.     The FCC also addressed the argument that commingling should be prohibited because of the billing and operational issues involved in commingling a UNE with an interstate access service.  Significantly, the FCC concluded that these billing and operational issues could be addressed "through the same process that applies for other changes in our unbundling requirements adopted herein, *i.e., through change of law provisions in interconnection agreements*."[16]  Interconnection agreements are subject to the arbitration provisions of Section 252 of the Act.

---

[14] *TRO*, ¶ 579.
[15] *Id.*, ¶ 581 (footnotes omitted).
[16] *Id.*, ¶ 583 (emphasis added).

ATTORNEY GENERAL OF WASHINGTON
Utilities and Transportation Division
1400 S Evergreen Park Drive SW
PO Box 40128 Olympia, WA 98504-0128
(360) 664-1183

**C.      The Qwest-Eschelon Arbitration Proceedings before the Commission and the Issues Presented for Review**

18.      In 2001, Qwest and Eschelon began to negotiate the terms and conditions of an interconnection agreement to replace their then-existing agreement.[17]  Although the parties agreed on many provisions, they also reached an impasse on multiple issues.[18]

19.      On August 9, 1996, Qwest filed a petition with the WUTC for arbitration of the remaining issues, "pursuant to 47 U.S.C. § 252(b)."[19] Among the issues that Qwest expressly requested the Commission to arbitrate are both of the issues which are the subject of Qwest's complaint and Eschelon's counterclaim in this proceeding: (1) conversions [arbitration issue numbers 9-43 and 9-44 through 9-44(c); and (2) commingling [arbitration issue numbers 9-58 and subparts and issue 9-59, of which issue 9-58(c) relates to billing and customer service record for commingled EELs.][20]

20.      The parties filed three rounds of written testimony and conducted an evidentiary hearing before an administrative law judge acting as Arbitrator.  Following post-hearing briefs, the Arbitrator issued a Report and Decision resolving the contested issues.[21]  Both Eschelon and Qwest sought review of certain issues, and the Commission issued its Order affirming the

---

[17] Qwest's Petition for Arbitration, *In the Matter of the Petition of Qwest Corporation for Arbitration with Eschelon Telecom, Inc., Pursuant to 47 U.S.C. Section 252 of the Federal Telecommunications Act of 1996*, Certified Record ("CR") 0003, ¶ 8, at 3.
[18] As the Commission indicated in Docket UT-063061, Order 19, Order Denying Qwest's Petition for Reconsideration, ¶ 17, at 7, ("Order 19") approximately 150 issues were originally presented to the Commission for arbitration.  CR 3221.  Now, only the issues pertaining to conversions and billing for commingled EELs remain in this appeal.
[19] *Id.,*
[20] Qwest Arbitration Petition, CR 0003, Exhibit 1, at 81-87 (conversions); and at 62-64 and 111-128 (commingling).
[21] Docket UT-063061, Order 16, Arbitrator's Report and Decision, CR 2272.

ATTORNEY GENERAL OF WASHINGTON
Utilities and Transportation Division
1400 S Evergreen Park Drive SW
PO Box 40128 Olympia, WA 98504-0128
(360) 664-1183

1  Arbitrator's Report and Decision, in part, and modifying it, in part.[22]  Subsequently, the

2  Commission denied Qwest's petition for reconsideration.[23]  Qwest then filed its complaint

3  before this Court contesting portions of the Commission's decision, and Eschelon filed its

4  counterclaim and cross-claim.

5

6       21.       Eschelon proposed interconnection agreement language regarding conversions

7  providing that the circuit identification number ("circuit ID") would not be changed as a result

8  of a conversion from a UNE to a non-UNE, and that Qwest implement the conversion through

9  a price change.[24]  Eschelon presented evidence that a change in circuit ID when converting a

10  circuit was unnecessary, imposed unnecessary costs on Eschelon, and caused a risk of

11  disrupting service to its customers.[25]  Qwest argued that its existing process required a change

12  in the circuit ID when a UNE conversion was made, and that using the same circuit ID would

13  inappropriately impose costs on Qwest and interfere with its ability to provide services.[26]

14  Qwest, however, did not offer any alternative contract language for conversion-related issues.[27]

15

16       22.       The Arbitrator recommended the adoption of Eschelon's proposed ICA

17  language for conversions, finding that Eschelon's proposed language ensures that conversions

18  do not cause disruptions for its business operations and potential harm to its end user

19  customers.[28]  The Commission likewise adopted Eschelon's position that the circuit ID may

20  not be changed as a result of a conversion.  The Commission was guided primarily by the

21

22  _____

23  [22] Docket UT-063061, Order 18, Final Order Granting in Part, Eschelon's Petition for Review; Granting, in Part, Qwest's Petition for Review; Affirming, in Part, and Modifying, in Part, Arbitrator's Report and Decision, October 16, 2008 ("Order 18"), CR 3046.

24  [23] Order 19, *supra.*
   [24] Order 18, ¶¶ 53, 59, 62, CR 3066-3069.

25  [25] Eschelon (Starkey) Direct Testimony, Exh. 62, at 154-157, CR 5589-5592.
   [26] Order 18, ¶ 60.  CR 3068.

26  [27] *Id.*, ¶ 54.  CR 3066.
   [28] Order 16, ¶ 91.

ATTORNEY GENERAL OF WASHINGTON
Utilities and Transportation Division
1400 S Evergreen Park Drive SW
PO Box 40128 Olympia, WA 98504-0128
(360) 664-1183

FCC's conclusion that conversion is largely a billing function, and that the underlying facilities do not change merely as a result of UNE services being repriced as non-UNE, tariffed services.[29]  The Commission also was persuaded that Qwest has successfully converted facilities in the reverse direction, i.e., from non-UNE to UNE, without altering the circuit ID.[30]

23.     The Commission also adopted the Arbitrator's recommendation that a conversion rate of $25.00 per circuit, which was agreed upon by Qwest, Eschelon, and other parties in a separate WUTC docket, represented a "reasonable compromise rate for the conversion process at this time."  The Commission noted that this rate was arrived at through negotiation, and that it is reasonable to assume that each party in that proceeding adequately represented its interests in arriving at the $25.00 rate.  The Commission expressly adopted this as an interim rate, subject to revision in an appropriate costing proceeding.   The Commission rejected Qwest's claim to recover its alleged conversion costs, since Qwest failed to provide any data in the record to establish what those costs might be.[31]

24.     Regarding commingled EELs, Qwest asserted that it had separate billing systems for UNEs and tariffed services and that it would be an extraordinary burden to include information on commingled arrangements on a single bill.  Eschelon presented two alternatives before the Arbitrator.  It argued in favor of a single order, single circuit ID, single bill, and single billing account number.  Alternatively, it requested that commingled elements be listed separately on a single bill, to ensure that it could manage repair and billing functions to its customers' satisfaction.  The Arbitrator rejected Eschelon's preferred proposal and adopted

---

[29] Order 18, ¶ 83.  CR 3076.
[30] Id., ¶ 84, CR 3076, citing Eschelon's Reply to Qwest's Petition for Review, at 22, CR 2702; Eschelon (Starkey) Direct Testimony, Exh. 62, at 156, CR 5591.
[31] Id., ¶ 90-91.  CR 3078-3079.

ATTORNEY GENERAL OF WASHINGTON
Utilities and Transportation Division
1400 S Evergreen Park Drive SW
PO Box 40128 Olympia, WA 98504-0128
(360) 664-1183

Qwest's language, together with Eschelon's alternative language. Thus, under the Arbitrator's ruling, Qwest may require separate ordering, circuit IDs, and billing for UNE and non-UNE elements that comprise a commingled arrangement, but Qwest must then identify and relate the separate components on the bill and customer service records.[32]

25.     Qwest petitioned the Commission for review, arguing that UNE elements of a commingled arrangement are priced and provisioned under a regulatory scheme that does not apply to tariffed services.

26.     Eschelon, significantly, did *not* petition for review of the Arbitrator's decision, nor at any time did it request that the Commission reject that decision and adopt its "preferred" alternative.  While Eschelon did assert that *Qwest's* proposal creates operational barriers that diminish the value of commingling, Eschelon described the Arbitrator's decision as one that balances the parties' interests and achieves a workable solution.[33]

27.     The Commission adopted the Arbitrator's decision regarding billing for commingled EELs.  It concluded that this would result in commingled arrangements being offered in a manner that avoids operational barriers and makes them useful products for CLECs.[34]

28.     Qwest did not originally contest the Commission's jurisdiction to determine matters related to conversions and commingling.  In fact, Qwest originally requested that the Commission arbitrate and decide these issues.  Only after receiving an unfavorable decision from the Arbitrator did Qwest first raise the claim, in its petition for administrative review (and

---

[32] *Id.*, ¶ 93-94 (also citing to Arbitrator's Report and decision at ¶ 118).  CR 3079-3080.
[33] *Id.*, ¶¶ 95-96, CR 3081-3082; Eschelon's Reply to Qwest's Petition for Review, ¶ 58, p. 31, and ¶ 64, p. 36. CR 2711, 2716.
[34] Order 18, ¶¶ 97-100, CR 3082-3083.

ATTORNEY GENERAL OF WASHINGTON
Utilities and Transportation Division
1400 S Evergreen Park Drive SW
PO Box 40128 Olympia, WA 98504-0128
(360) 664-1183

now before this Court), that the Commission lacks jurisdiction over these matters.  Qwest also claims that the Commission impermissibly regulated interstate services beyond its jurisdiction.

29.     The Commission rejected Qwest's jurisdictional arguments, both in its Final Order (Order 18) and its Order Denying Qwest's Petition for Reconsideration (Order 19).  The Commission found that both Sections 251 and 252 of the Act, together with the FCC's rules and orders implementing that Act, clearly conferred jurisdiction on the Commission to decide these matters.  The Commission noted that the issues under consideration here address "the operational processes attendant to converting existing circuits from a UNE basis to a non-UNE basis and fall well within our authority pursuant to Section 252 and the FCC's orders revising ILEC obligations under Section 251."  The Commission further noted that it simply was following "the FCC's specific guidance to carriers and state commissions to address, through the Section 252 process, the transition from UNE services to non-UNE services and establish any rates, terms, and conditions necessary to implement the changes prescribed by the FCC."[35]

30.     The Commission rejected Qwest's reliance on a series of federal court decisions placing limits on state authority as not on point with the facts here.  The Commission noted that all of those decisions address efforts by other state commissions to rely upon state law or Section 271 of the Act to impose or address unbundling issues, which is a circumstance not present here.[36]

31.     The Minnesota Public Commission has ruled that it has jurisdiction, under Section 252 of the Act, over the terms and conditions relating to both the conversion and

---

[35] Order 19, ¶¶ 19-20, CR 3221-3222.
[36] *Id.*

ATTORNEY GENERAL OF WASHINGTON
Utilities and Transportation Division
1400 S Evergreen Park Drive SW
PO Box 40128 Olympia, WA 98504-0128
(360) 664-1183

1  commingling processes.[37]

2                    **CONCLUSIONS OF LAW**

3      1.      This Court has jurisdiction over Qwest's claims and Eschelon's counterclaim

4  and cross-claim pursuant to 47 U.S.C. § 252(e)(6).

5      2.      Qwest contests the Commission's jurisdiction to order (a) that the circuit ID not

6  be changed when the circuit is converted from a UNE to a non-UNE, and (b) that Qwest relate

7  8  the UNE and non-UNE portions of a commingled EEL on its bill.  Qwest also contends that the

9  Commission's decision constitutes impermissible regulation of interstate services beyond its

10  jurisdiction.

11      3.      Qwest also contests the Commission's decision adopting a $25.00 per circuit

12  charge to convert a circuit, on the ground that this violated Qwest's right to recover its

13  reasonable costs and is inconsistent with the Act.

14

15      4.      Eschelon's counterclaim and cross-claim contests the Commission's adoption of

16  Eschelon's alternative position concerning billing for commingled EELs, contending that the

17  Commission's decision is arbitrary and capricious and inconsistent with the Act.

18      5.      The question of whether the Commission's decision complies with the

19  Telecommunications Act and its implementing regulations, including the scope of the

20  21  Commission's jurisdiction under the Act, is a question of law subject to *de novo* review.  All

22      [37] Docket No. P-421/C-07-370, *In the Matter of Qwest Corporation's Conversions of UNEs to Non-
23  UNEs*; Docket No. P-421/C-07-371, *In the Matter of Qwest Corporation's Arrangements for Commingled
Elements*; Order Adopting Administrative Law Judge's Recommended Order On Motion for Summary
24  Disposition, at 2-3 (Minnesota Publ. Util. Comm'n, March 23, 2009).
        Docket No. P-421/C-07-370, *In the Matter of Qwest Corporation's Conversions of UNEs to Non-
25  UNEs*; Docket No. P-421/C-07-371, *In the Matter of Qwest Corporation's Arrangements for Commingled
Elements*; Recommended Order on Motion for Summary Disposition (Minnesota Publ. Util. Comm'n, December
26  9, 2008).

other issues are subject to the arbitrary and capricious standard.  A party claiming that a decision is arbitrary and capricious must show either that the decision was not supported by substantial evidence or that the agency made a clear error of judgment.[38]

6.      The Court finds that the Commission has jurisdiction under sections 251 and 252 of the Telecommunications Act, together with the FCC's rules and orders implementing the Act, over all of the issues presented to the Court on appeal in this case.  The Court rejects Qwest's claim that the Commission lacks jurisdiction to decide these matters.  The Court also rejects Qwest's claim that the Commission's decision constitutes impermissible regulation of interstate services beyond its jurisdiction.

7.      The Court finds that the Commission's decision to adopt a $25.00 per circuit charge is consistent with the requirements of the Act, and is not arbitrary or capricious.

8.      The Court rejects Eschelon's counterclaim and cross-claim contesting the Commission's decision to adopt Eschelon's alternative position concerning billing for commingled EELs.  The Court finds that the Commission's decision is consistent with the requirements of the Act, and is not arbitrary or capricious.

## ORDER FOR JUDGMENT

Based upon the foregoing, the Court hereby rules that Orders 18 and 19 of the Commission are AFFIRMED.

Dated this 4th day of July, 2010.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE

---

[38] *US West Communications v. MFS Intelenet,* 193 F.3d 1112, 1117 (9th Cir. 1999).

ATTORNEY GENERAL OF WASHINGTON
Utilities and Transportation Division
1400 S Evergreen Park Drive SW
PO Box 40128 Olympia, WA 98504-0128
(360) 664-1183